http://www.va.gov/vetapp16/Files4/1634366.txt

Citation Nr: 1634366 
Decision Date: 08/02/16 Archive Date: 09/06/16

DOCKET NO. 10-40 502A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina

THE ISSUES

1. Entitlement to a disability rating in excess of 30 percent prior to May 1, 2014 and in excess of 70 percent thereafter for depressive disorder.

2. Entitlement to a disability rating in excess of 0 percent prior to May 1, 2014 and in excess of 10 percent thereafter for frontal sinusitis, formerly rated as maxillary sinusitis.

3. Entitlement to a disability rating in excess of 10 percent prior to May 1, 2014 and in excess of 20 percent thereafter for lumbosacral strain.

REPRESENTATION

Veteran represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

Patricia Veresink, Counsel

INTRODUCTION

The Veteran served on active duty for 20 years and has verified active duty from June 1977 to August 1992. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a May 2010 rating decision issued by a Department of Veterans Affairs (VA) Regional Office (RO). 

In February 2014, the Board remanded the issues for further development. In a subsequent September 2014 rating decision, the Agency of Original Jurisdiction (AOJ) granted an increased disability rating for each disability. As those awards did not represent a total grant of the benefits sought on appeal, the claims for increase remain before the Board. AB v. Brown, 6 Vet. App. 35 (1993). The case has been returned to the Board for adjudication.

The issue of entitlement to a higher rating for lumbosacral strain is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.

FINDINGS OF FACT

1. Prior to May 1, 2014, the Veteran's depressive disorder manifested with occupational and social impairment, with reduced reliability and productivity due to such symptoms as: moderate to severe anxiety, depression, decreased energy, constricted/blunted affect, crying spells, insomnia, anger, and irritability issues, but without occupational and social impairment, with deficiencies in most area, such as work, school, family relations, judgment, thinking or mood.

2. From May 1, 2014 forward, the Veteran's depressive disorder manifested with occupational and social impairment, with deficiencies in most area, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as: depressed mood, markedly diminished interest or pleasure in all or almost all activities, insomnia or hypersomnia, psychomotor agitation or retardation, fatigue or loss of energy, feelings of worthlessness or excessive or inappropriate guilt, diminished ability to think or concentrate or indecisiveness, anxiety, panic attacks that occur weekly or less often, mild memory loss, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances including work or a work-like setting, suicidal ideation, and impaired impulse control such as unprovoked irritability with periods of violence, but without total occupational and social impairment. 

3. Prior to May 1, 2014, the Veteran's sinusitis manifested with fewer than three non-incapacitating episodes of sinusitis and no incapacitating episodes. 

4. From May 1, 2014 forward, the Veteran's sinusitis manifested with fewer than six non-incapacitating episodes of sinusitis and no incapacitating episodes or sinus surgeries.

CONCLUSIONS OF LAW

1. The criteria for a disability rating of 50 percent, but no higher, prior to May 1, 2014, for depressive disorder, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code 9434 (2015).

2. The criteria for a disability rating in excess of 70 percent from May 1, 2014 forward for depressive disorder have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code 9434 (2015).

3. The criteria for a disability rating in excess of 0 percent prior to May 1, 2014 and in excess of 10 percent thereafter for frontal sinusitis, formerly rated as maxillary sinusitis, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.97, Diagnostic Code 6513 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

VA is required to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). Compliant notice was provided in July 2009.

In addition, the Board finds that the duty to assist a claimant has been satisfied. The Veteran's service treatment records are on file, as are various post-service medical records. VA examinations have been conducted. 

The Board also notes that actions requested in the prior remands have been undertaken. Indeed, treatment records were obtained and VA examinations were provided. The examiner's described the disabilities in detail sufficient for rating purposes. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)).

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 
Increased Rating - Laws and Regulations

Disability ratings are determined by applying the criteria set forth in the VA Schedule of Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating many accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a questions as to which of two evaluations apply, assigning a higher of the two where the disability pictures more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.40 (2015); see also 38 C.F.R. §§ 4.45, 4.59 (2015). Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

Increased Rating - Major Depressive Disorder

Considerations in evaluating a mental disorder include the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission. The evaluation must be based on all evidence of record that bears on occupational and social impairment rather than solely on an examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). When determining the appropriate disability evaluation to assign, the Board's "primary consideration" is the Veteran's symptoms. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013).

According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth edition (DSM IV), a global assessment of function (GAF) score reflects the "psychological, social, and occupational functioning in a hypothetical continuum of mental health-illness." DSM IV, American Psychiatric Association (1994), pp.46-47; 38 C.F.R. §§ 4.125(a), 4.130. A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A GAF score of 51-60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

The Veteran's service-connected depressive disorder has been rated under the provisions of 38 C.F.R. § 4.130, Diagnostic Code 9434, which provides, in part as follows: 

A 30 percent disability rating is warranted when the Veteran experiences occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and normal conversation), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

A 50 percent disability rating is warranted when the Veteran experiences occupational and social impairment, with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent disability rating is warranted when the Veteran experiences occupational and social impairment, with deficiencies in most area, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or work like setting); inability to establish and maintain effective relationships.

A 100 percent disability rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of closest relatives, own occupation, or own name. 38 C.F.R. § 4.130.

In Mittleider v. West, 11 Vet. App. 181 (1998), the United States Court of Appeals for Veterans Claims (Court) held that VA regulations require that when the symptoms and/or degree of impairment due to a Veteran's service-connected psychiatric disability cannot be distinguished from any other diagnosed psychiatric disorders, VA must consider all psychiatric symptoms in the adjudication of the claim.

Prior to May 1, 2014, the Veteran's depressive disorder is evaluated at 30 percent. To receive a higher disability rating, the evidence must show occupational and social impairment, with reduced reliability and productivity.

The Veteran was afforded a VA examination in March 2010. The Veteran reported a steady increase in his level of depressive symptomatology. He noted moderate to severe anxiety and depression. He reported difficulty sleeping and decreased energy, as well as crying spells two to three times per week. He had not had treatment since the 1980s. The examiner noted no more than mild to occasionally moderate impairment in occupational reliability and productivity. The Veteran lived with his wife and daughter and went to work on a regular basis. He socialized about once per week with family and sang in the church choir. He stated that he sometimes did not attend church services or would avoid people because of his depression. Overall, the examiner determined that the Veteran had mild to moderate impairment in social adjustment. He had been married for twenty one years and they got along reasonably well with some minor stresses due to his irritability or self-isolation. He was alert, oriented, and cooperative. He showed no signs of a thought disorder, looseness of associations, flight of ideas, hallucinations, delusions, obsessions, compulsions, or phobias. His affect was somewhat constricted and blunted. He had moderate insomnia as well as some anger and irritability issues, crying spells two to three times per week, and decreased energy. He denied panic attacks, suicidal or homicidal ideation, and substance abuse. Insight and judgment were intact. Intellectual capacity appeared adequate. The examiner noted some complaints of difficulty with focusing, attention, and concentration. The examiner diagnosed depressive disorder, not otherwise specified with mild to moderate social and occupational functioning and a GAF of 58.

Treatment records throughout this period are silent regarding psychiatric complaints. In September 2011, the Veteran reported no psychological symptoms, no anxiety, no depression, and no suicidal or homicidal thoughts. In December 2012 and throughout treatment, the Veteran's depression screen was negative. In February 2013, the Veteran denied a psychiatric illness or suicidal or homicidal thoughts. 

Resolving any reasonable doubt as may arise as to the severity of disability in this case in favor of the Veteran, the Board concludes that the criteria for a 50 percent disability rating are met for this period. The examiner described the Veteran's symptoms as productive of mild to moderate impairment in occupational reliability and productivity with mild to moderate impairment in social adjustment. The Veteran's symptoms include moderate to severe anxiety and depression, constricted/blunted affect, decreased energy, crying spells, insomnia, anger, and irritability issues. The examiner additionally assigned a GAF score of 58, which represents moderate symptoms or moderate difficulty in social, occupational, or school functioning.
Although the Veteran does not present with all the symptoms provided in the criteria for a 50 percent disability rating, the Board has considered that the symptoms listed in the General Rating Formula for Mental Disorders are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. See Vazquez-Claudio, 713 F.3d at 118; see also Mauerhan v. Principi, 16 Vet. App. 436 (2002). Additionally, although the Veteran does not receive treatment for his psychiatric disability, the VA examiner found his symptoms to range from mild to moderate and be productive of occupational and social impairment, with reduced reliability and productivity. 

As to whether the Veteran is entitled to a 70 percent disability rating prior to May 1, 2014, the Board notes that the Veteran's treatment records do not indicate a severe psychiatric disability. Additionally, the VA examiner in March 2010 found only mild to moderate symptoms and did not indicate occupational and social impairment with deficiencies in most area, such as work, school, family relations, judgment, thinking, or mood. The Veteran maintained employment, remained close to his family, and had no documented problems with judgment or thinking. He denied suicide attempts and panic attacks, was oriented and cooperative on examination, and had no noted problems with speech, rituals, violence, impulse control, or appearance. 

From May 1, 2014, the Veteran's depressive disorder is rated at 70 percent disabling. To receive a higher disability rating, the evidence must show total occupational and social impairment. 

Treatment records remain silent regarding any psychiatric disability complaints during this time period. 

The Veteran was afforded a VA examination in May 2014. The examiner reviewed the Veteran's claims file. He noted depressed mood most of the day, nearly every day; markedly diminished interest or pleasure in all or almost all activities most of the day, nearly every day; insomnia or hypersomnia nearly every day; psychomotor agitation or retardation nearly every day; fatigue or loss of energy nearly every day; feelings of worthlessness or excessive or inappropriate guilt nearly every day; diminished ability to think or concentrate or indecisiveness nearly every day; and suicidal ideation without any intent or attempts. The examiner noted occupational and social impairment with reduced reliability and productivity. The examiner listed symptoms to include depressed mood, anxiety, panic attacks that occur weekly or less often, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances including work or a work-like setting, suicidal ideation, and impaired impulse control such as unprovoked irritability with periods of violence. On examination the Veteran was neat and well groomed. He reported a sad mood. Speech was normal rate but loud. He was oriented and cooperative, but had a somewhat disorganized thought process and was visibly agitated during the examination. The Veteran had no delusions or hallucinations. His judgment was fair, his intelligence average, and his insight was limited. He denied homicidal and suicidal thoughts. He had fair impulse control and no memory problems. 

The examiner noted the Veteran's relevant occupational history. The Veteran continued to work in the maintenance department. He worked there almost nineteen years, full-time. He stated that his co-workers have commented on his anger problems. He reported conflicts with his supervisor and verbal altercations at work. He stated that he often has to walk off when angry, to be alone by himself. He recounted multiple instances of yelling at co-workers, and stated that they usually would walk away and leave him alone. The Veteran also indicated some part-time work at his church talking to people off the streets and working with Veterans. He reported a recent conflict with a day-care worker and indicated conflicts with other church members. The Veteran further described two instances of domestic violence involving his wife and daughter. 

The Board finds that a preponderance of the evidence shows that the Veteran's depressive disorder did not manifest to the level of a 100 percent disability rating. 

The Veteran's symptoms did not result in total occupational and social impairment, as seen by him continued employment, as well as his relationship with his family. The examples set forth in the rating criteria include gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place, and memory loss for names of closest relatives, own occupation, or own name. As noted, on examination the Veteran was able to communicate clearly and behave appropriately, did not have delusions or hallucinations, denied suicidal and homicidal ideation, was neat, well groomed, and oriented, and had no memory problems. The Board has also considered that the symptoms listed in the General Rating Formula for Mental Disorders are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. See Vazquez-Claudio, 713 F.3d at 118; see also Mauerhan, 16 Vet. App. 436. The Board finds that the totality of the Veteran's symptoms, to include those not listed in the rating criteria, do not rise to the level of total occupational and social impairment. 

The Board acknowledges that the Veteran experiences severe symptoms of his depressive disorder; however these symptoms more nearly approximate the 70 percent rating criteria of occupational and social impairment, with deficiencies in most area, such as work, school, family relations, judgment, thinking or mood. The Veteran maintains employment and functions socially, although with difficulty. As such, the Board finds that the preponderance of the evidence is against the claim for a higher rating during the relevant time period.

Increased Rating - Sinusitis

The Veteran's service-connected sinusitis was originally rated as noncompensable under Diagnostic Code 6513 for maxillary sinusitis. Effective May 1, 2014, the Veteran's sinusitis was rated at 10 percent under Diagnostic Code 6512 for frontal sinusitis. Both Diagnostic Codes 6512 and 6513 instruct the rater to apply the General Rating Formula for Sinusitis. 

Under that provision, sinusitis by x-ray only warrants a 0 percent disability rating. One or two incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or three to six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting warrants a 10 percent rating. Three or more incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting warrants a 30 percent rating. Sinusitis following radical surgery with chronic osteomyelitis, or near constant sinusitis characterized by headaches, pain and tenderness of affected sinus, and purulent discharge or crusting after repeated surgeries warrants a 50 percent disability rating. Note: An incapacitating episode of sinusitis means one that requires bed rest and treatment by a physician. 38 C.F.R. § 4.97.

To receive a higher disability rating prior to May 1, 2014, the evidence must show one or two incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or three to six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. 

The Veteran was afforded a VA examination in March 2010. The examiner noted that the Veteran had no cough, sinus drainage, or sinus headaches. He noted no incapacitating or non-incapacitating episodes. The Veteran had symptoms of sinus and nasal congestion without breathing difficulty or speech impairment. The examiner noted no tenderness over the sinuses. The Veteran reported that he lost 2 weeks of work during the prior 12 months due to doctor's visits. The examiner diagnosed chronic sinusitis with significant effects on the Veteran's usual occupation in that he has difficulty breathing through the nose in some closed areas, but no problems with sedentary work or activities of daily living. 

December 2010 treatment records show sinus congestion and bloody nose. The examiner noted sinus tenderness. He was diagnosed with allergic rhinitis. In January 2011, the Veteran reported headaches, sinus pressure, and dry sinuses. He was diagnosed with sinusitis. In June 2011, the Veteran complained of sinus headaches, nasal congestion, and runny nose. He was diagnosed with allergic rhinitis and given antibiotics. An October 2011 treatment record showed a diagnosis of sinusitis with sinus pain and tenderness. The Veteran was diagnosed with mucous retention cyst left maxillary sinus in January 2013. In August 2013, the Veteran reported sinus blockage and chronic nasal congestion. An August 2013 CT of the sinuses was within normal limits and without finding of active mucosal disease. On palpation there was no tenderness over the maxillary sinuses. The examiner noted no evidence of chronic sinusitis, but did note the maxillary retention cyst, which he described as small and not warranting any intervention. A December 2013 treatment record showed the mucous retention cyst in the maxillary sinus with chronic nasal congestion. The Veteran reported difficulty breathing and headaches at night. The examiner found no significant rhinorrhea or postnasal drainage. The Veteran's septum was midline, turbinates were normal in size, and there were no polyps, purulence, or masses. 

The Board notes that the Veteran does not meet the criteria for a higher disability rating prior to May 1, 2014. The evidence does not show one or two incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or three to six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. The Veteran had multiple complaints related to headaches and his nose; however, the Veteran was diagnosed with allergic rhinitis multiple times, which is a separate non-service connected disability. The Veteran had diagnosed non-incapacitating episodes of sinusitis fewer than three times and did not have any incapacitating episodes. 

To receive a higher disability rating from May 1, 2014 forward, the evidence must show three or more incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. 

The Veteran was afforded a VA examination in May 2014. The examiner reviewed the claims file and diagnosed recurrent acute sinusitis. The Veteran used Flonase and Astelin on a daily basis. He reported pressure in his paranasal sinus areas that can progress to the frontal area of his head. The Veteran had near constant sinusitis. He had it on a daily basis, but on medication his bouts occurred twice per week. He had headaches about twice per month and was treated with antibiotics about four times per year. The Veteran had four non-incapacitating episodes of sinusitis characterized by headaches, pain, and purulent discharge or crusting in the past 12 months. The Veteran had no incapacitating episodes and no sinus surgery. CT scan of the sinuses noncontrast demonstrated a normal appearance to the frontal and ethmoid sphenoid sinuses. The right maxillary sinus appeared normal. The left maxillary sinus contained a very small mucous retention cyst on the floor of the left maxillary sinus. The examiner found no maxillary sinus mucosal disease. The examiner noted a functional impact to include missing work when he has his infections that occur around four times a year. He stayed out a couple of days per incident.

The Board notes that the Veteran does not meet the criteria for a higher disability rating from May 1, 2014 forward. The evidence does not show three or more incapacitating episodes per year of sinusitis requiring prolonged (lasting four to six weeks) antibiotic treatment, or more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. The VA examiner specifically noted only four non-incapacitating episodes of sinusitis in the prior 12 months with no incapacitating episodes and no sinus surgery. 

Entitlement to a disability rating in excess of 0 percent prior to May 1, 2014 and in excess of 10 percent thereafter for sinusitis is not warranted and the claim must be denied. In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the current appeal. See 38 U.S.C.A. § 5107(b) (West 2014).

Extraschedular Consideration

The Board has also considered whether referral for an extraschedular rating is warranted. Extraschedular consideration requires a three-step inquiry. See 38 C.F.R. § 3.321(b)(1); see also Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating adequately contemplates the claimant's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. If the claimant's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation to determine whether an extraschedular rating is warranted. 

Regarding the Veteran's depressive disorder, the disability picture is not so unusual or exceptional in nature as to render the schedular evaluation inadequate. The Veteran's service-connected depressive disorder is evaluated as a psychiatric disability using the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130. Notably, the symptoms listed in 38 C.F.R. § 4.130 are not intended to constitute an exhaustive list, but rather to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan, 16 Vet. App. 436. Essentially, the General Rating Formula contemplates all symptoms causing social or occupational impairment. The Board finds that all of the Veteran's symptoms are contemplated by the Rating Schedule and as a result referral for extraschedular consideration for this disability is not warranted. See 38 C.F.R. § 3.321(b)(1); Thun, 22 Vet. App. 111.

The Veteran's sinusitis manifested with fewer than three non-incapacitating episodes of sinusitis and no incapacitating episodes prior to May 1, 2014 and with some non-incapacitating episodes of sinusitis. These manifestations are contemplated in the applicable rating criteria. See 38 C.F.R. § 4.97 Diagnostic Codes 6513. The Board does not find that the Veteran has described other functional effects that are "exceptional" or not otherwise contemplated by the assigned evaluations for this disability. Rather, his description of symptomatology is consistent with the degree of disability addressed by such evaluations. Therefore, the rating criteria are adequate to evaluate the Veteran's sinusitis and referral for consideration of an extraschedular rating is not warranted. 

The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. The Court in Yancy v. McDonald, 27 Vet. App. 484, 495 (2016), subsequently held that the Board is required to address whether referral for extraschedular consideration is warranted for a Veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities. Neither scenario applies to the instant case. 

Finally, the Board adds that the record does not reveal that the Veteran is claiming to be rendered unemployable by virtue of his depressive disorder or sinusitis, and the Board finds that the record has not raised an implied claim for a total disability rating based on individual unemployability due to service-connected disabilities pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009); thus no discussion or remand of such a claim is warranted. 

ORDER

Entitlement to a disability rating of 50 percent prior to May 1, 2014 for depressive disorder is granted.

Entitlement to a disability rating in excess of 70 percent for depressive disorder from May 1, 2014 is denied.

Entitlement to a disability rating in excess of 0 percent prior to May 1, 2014 and in excess of 10 percent thereafter for frontal sinusitis, formerly rated as maxillary sinusitis is denied.
REMAND

The Veteran is currently service-connected for lumbosacral strain. During the May 2014 VA examination, the examiner diagnosed intervertebral disc syndrome (IVDS) of the thoracolumbar spine with incapacitating episodes having a total duration of at least six weeks during the past 12 months. The Board notes that the Veteran's service-connected back disorder is lumbosacral strain, which is a muscle disorder. Therefore, a medical opinion is necessary to determine if the Veteran's IVDS is considered part of his currently service-connected lumbosacral strain, stems from the same causal basis, or if the Veteran's lumbosacral strain has caused or aggravated the IVDS. As such, a remand is necessary for a medical opinion prior to making a determination regarding the disability rating for the Veteran's low back disability. 

The Board also notes that "incapacitating episodes" of IVDS are defined by regulation as "a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician." 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1) (2015). In this case, it is unclear if the examiner's report of six weeks of incapacitating episodes meets the regulatory definition regarding incapacitating episodes. On remand, an opinion should be obtained on this matter and the Veteran should be asked to submit evidence showing bed rest for his back disability prescribed by a physician. 

Accordingly, the case is REMANDED for the following action:

1. Request that the Veteran identify any episodes of bed rest for his back prescribed by a physician. Identified records should be obtained as necessary. 

2. Return the claims file to the May 2014 VA examiner to obtain an addendum opinion regarding the Veteran's IVDS. If the May 2014 VA examiner is unavailable, provide the claims file to another qualified examiner to obtain the requested opinion. The examiner should review the claims file. Should the examiner determine that a new VA examination is required to provide an opinion, such examination should be provided and any tests deemed necessary should be accomplished. 

a.) The examiner should provide an opinion as to whether it is at least as likely as not (a 50 percent probability or more) that the Veteran's IVDS is causally related to the Veteran's service-connected lumbosacral strain or related to the same causal basis as the Veteran's lumbosacral strain. 

b.) The examiner should also provide an opinion as to whether it is at least as likely as not (a 50 percent probability or more) that the Veteran's IVDS has been permanently worsened beyond the natural progression (versus temporary exacerbations of symptoms) by his lumbosacral strain. The examiner should explain why or why not. 

If the physician finds the IVDS is permanently worsened beyond normal progression by the Veteran's lumbosacral strain, the examiner should attempt to quantify the degree of worsening beyond the baseline level of the IVDS prior to aggravation.

The examiner should identify if the Veteran has had incapacitating episodes of IVDS (defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician). If so, the frequency and duration of the episodes should be described. 

A complete rationale should be provided for any opinion given.

3. After undertaking the development above and any additional development deemed necessary, the Veteran's claim should be readjudicated. If the benefits sought on appeal remain denied, the Veteran and his representative should be furnished a supplemental statement of the case and be given an appropriate period to respond thereto before the case is returned to the Board, if in order.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
Nathan Kroes
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs